

SIGNED this 14th day of November, 2025

*Rachel Ralston Mancl*
Rachel Ralston Mancl
UNITED STATES BANKRUPTCY JUDGE

_____

**[This opinion is not intended for publication as the precedential effect is deemed limited.]**

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE EASTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| In re<br><br>NICHOLAS VAUGHN MORRIS,<br><br>　　　　　　　　　Debtor. | No. 2:25-bk-50475-RRM<br>Chapter 7 |
| NICHOLAS VAUGHN MORRIS,<br><br>　　Plaintiff,<br><br>vs.<br><br>KNOXVILLE TVA EMPLOYEES CREDIT UNION,<br><br>　　Defendant. | No. 2:25-ap-05010-RRM<br>Adversary Proceeding |

## M E M O R A N D U M

APPEARANCES:

| | |
|---|---|
| Dean Greer, Esq.<br>Post Office Box 3708<br>Kingsport, TN 37664<br>*Attorney for Plaintiff* | Jason L. Rogers, Esq.<br>Post Office Box 869<br>Knoxville, TN 37901<br>*Attorney for Defendant* |

**Rachel Ralston Mancl, United States Bankruptcy Judge.** In this adversary proceeding debtor Nicholas Vaughn Morris seeks to recover wages garnished by judgment creditor Knoxville TVA Employees Credit Union within the 90-day preference period that preceded his bankruptcy filing. Pending before the court is the Credit Union's motion to dismiss the debtor's complaint pursuant to Fed. R. Civ. P. 12(b)(6), made applicable by Fed. R. Bankr. P. 7012(b). The Credit Union contends the debtor's complaint fails to state a claim upon which relief can be granted because the debtor "has not met his burden of pleading under 11 U.S.C. § 547(b)(5)." Although the Credit Union's primary focus is on the fifth element of § 547(b), the court concludes that the debtor's complaint contains sufficient factual allegations concerning all the elements of a preferential transfer under § 547(b) and the debtor's standing under 11 U.S.C. § 522(h) to seek avoidance of the transfer. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Co. v. Twombly*, 550 U.S. 544, 570 (2007) ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'")).

Section 547(b) allows a trustee to avoid certain transfers of an interest of the debtor in property that were made prior to the debtor's bankruptcy filing. If the trustee elects not to avoid a transfer that is otherwise avoidable under § 547(b), the debtor may avoid the transfer. *See* 11 U.S.C. § 522(h)(2). Section 547(b) contains five paragraphs that set forth the elements the trustee, or—as in this case—the debtor, must satisfy to avoid a transfer under § 547(b). The Credit Union claims the debtor has not sufficiently pled the fifth element of § 547(b) which appears in paragraph (5). To satisfy that element the transfer at issue must enable the creditor to receive more than it would have received in a chapter 7 liquidation if the transfer had not occurred. 11 U.S.C. § 547(b)(5); *See Williams v. McNabb (In re McNabb)*, 567 B.R. 326, 340 (Bankr. W.D. Tenn. 2017) ("The test requires the Court to determine what distribution would be made in such a hypothetical Chapter 7 liquidation to the creditor who received the challenged transfer …, assuming that the transfer had not been made."). The question then is whether the debtor's complaint sufficiently alleges that the Credit Union's receipt of the debtor's garnished wages allowed it to receive more than it would have received in a chapter 7 liquidation had the garnishment not occurred.

The debtor's complaint makes the general assertion that the wage garnishments were preferential transfers under § 547 and the debtor has the right to recover the garnished funds under

2

§ 522(h).  The debtor's complaint also contains specific factual allegations concerning § 547(b)(5).  First, the debtor states that the chapter 7 trustee filed a report of no distribution certifying that there were no assets of the debtor's bankruptcy estate available for distribution to creditors.  Consequently, the only funds the Credit Union received in satisfaction of its claim came from the Credit Union's garnishment of the debtor's wages prior to the bankruptcy filing.  Second, the debtor states that he claimed the garnished wages as exempt property on his schedule C.  Because the debtor claimed his wages as exempt property, the wages would not have been available to distribute to creditors had the garnishment not occurred.  Taking these allegations together—that there were no other assets available for distribution to creditors and the debtor claimed the garnished wages as exempt property—the debtor's complaint does allege that the Credit Union's receipt of garnished wages allowed it to receive more than it would have received in a chapter 7 liquidation had the garnishment not occurred.  As such, the debtor has alleged facts sufficient to make a claim under § 547(b)(5).

The Credit Union argues that its receipt of garnished wages did not enable it to receive more than it would have received in a chapter 7 liquidation because it holds a judgment lien that is fully secured by the debtor's real property, and it would be paid in full if the debtor's assets were liquidated by the chapter 7 trustee.  While the Credit Union's argument is offered to disprove the debtor's allegation under § 547(b)(5), it instead creates an issue of fact.  Creation of an issue of fact does not negate the sufficiency of the allegation that the transfer enabled the Credit Union to receive more than it would have received in a chapter 7 liquidation.  Moreover, it would be premature for the court to accept the Credit Union's factual assertion that its judgment lien against the debtor's interest in real property is fully secured because that fact has been put to question by the debtor's motion to avoid the Credit Union's judgment lien.  The debtor's position is that there is no equity to which the judgment may attach after consideration of a mortgage and his homestead exemption.  That contested matter in the underlying bankruptcy case is set for an evidentiary hearing to determine the value of the debtor's interest in the real property.  Thus, the question of whether the Credit Union's judgment lien is fully secured remains an issue of fact until resolution of the pending contested matter.

Even if the Credit Union's judgment lien against the debtor's real property is found to be fully secured, the court is skeptical whether a liquation analysis can be finessed to consider a lien against the debtor's real property when the preferential transfers at issue were not transfers of the debtor's real property, but transfers of the debtor's wages. The Credit Union obtained a lien on the debtor's wages when it executed the wage garnishment. Under Tenn. Code Ann. § 26-2-214(b)(1), when the Credit Union executed the wage garnishment it had a lien on the debtor's earnings due at the time of the garnishment and a continuing lien on the debtor's subsequent earnings until the earlier of six months from service of the garnishment or the time the judgment was paid. *Id*. The Credit Union does not aver that its claim is fully secured by its lien against the debtor's wages. It appears there is no dispute that the Credit Union also obtained a separate lien against the debtor's real property by recording its judgment with the register of deeds in the county where the debtor's real property is located. Tenn. Code. Ann. § 25-5-101(b)(2). It is under this lien—against the debtor's real property—that the Credit Union claims to be fully secured. The transfers the debtor seeks to avoid as preferential are those of his wages covered by Credit Union's garnishment lien, not the judgment lien on the debtor's real property.

The Credit Union conflates its lienholder status as to the debtor's real property with its lienholder status as to the debtor's wages, arguing that its "position was not improved by the receipt of the garnished funds, given the *other* collateral securing the judgment at the time said funds were received–namely the [d]ebtor's real property."[1] Even if the Credit Union is fully secured as to the

---

[1] The Credit Union refers to 11 U.S.C. § 547(b)(5) as "the improvement in position test." The defense to a preference claim provided by § 547(c)(5) pertaining to security interests in inventory and receivables is what is commonly referred to as the improvement in position test. *See In re Qualia Clinical Serv., Inc.,* 652 F.3d 933, 941 (8th Cir. 2011) (citing 5 *Collier on Bankruptcy* ¶ 547(c)(5)'s explanation of "the improvement in position test set forth in section 547(c)(5)(A)"); *QMECT, Inc. v. Burlingame Capital Partners, II, L.P. (In re QMECT, Inc.)*, 373 B.R. 100, 106 (Bankr. N.D. Cal. 2007) ("This defense [of §547(c)(5)] is generally referred to as the 'improvement in position' defense."). Section 553(b) concerning setoffs is also referred to as an improvement in position test. *See Cain v. Mappa (In re Pineview Care Ctr., Inc).,* 152 B.R. 703, 708 (D.N.J. 1993) ("This 'improvement in position' test [of § 553(b)] was derived from § 547(c)(5) …."); *U.S. Dep't of Agric. Rural Hous. Serv. v. Riley*, 485 B.R. 361, 367 (W.D. Ky. 2012) ("To determine whether § 553(b) is applicable, courts apply the improvement-in-position test …."). Neither of these sections of the Bankruptcy Code apply here.

debtor's real property, that secured status does not give it secured status as to the debtor's other assets—namely, the debtor's wages. The court's liquidation analysis requires not a simple tallying of the Credit Union's secured claims regardless of the collateral securing them to determine whether its position improved, but rather an analysis of how creditors' claims would be paid if the debtor's assets were liquidated, and creditors were paid according to the Bankruptcy Code's priority scheme. The cases cited by the Credit Union for the proposition that payments to a creditor who is fully secured are not preferential because the creditor would receive payment up to the full value of its collateral in a chapter 7 liquidation involve a creditor being fully secured by the lien under which the transfers occurred. That is not the case here.

Granted, some courts such as *Reinhardt* cited by the Credit Union describe a transfer as not having "improved the [creditor's] position," *Reinhardt v. Prince (In re Reinhardt)*, 667 B.R. 13, 18 (E.D. Mich. 2025); but the facts of *Reinhardt* were quite different from those of the present case. In *Reinhardt*, the chapter 13 debtors sought to avoid as preferential a tax lien foreclosure judgment obtained by a taxing authority. The taxing authority's foreclosure was on a first-priority tax lien fully secured by the debtors' real property prior to the foreclosure judgment. The court said the foreclosure did nothing to improve the taxing authority's position because it would receive the same property when the property was liquidated. The transfer by the foreclosure judgment gave the taxing authority nothing more than it originally had because the tax lien was fully secured by the same collateral, the real property. That is markedly different than the situation in this instance where the Credit Union has two separate liens—one on the debtor's wages and one on the debtor's real property—and the transfers at issue were transfers of the debtor's wages, not transfers of the debtor's real property. In any event, the Credit Union will have an opportunity later to convince the court that it did not receive more by virtue of the garnished wages than it would have received without the garnishment. The Credit Union's argument to that effect now does not negate that the debtor's factual allegations under § 547(b)(5) were sufficiently pled.

The debtor's factual allegations concerning the other elements of § 547(b) were also sufficiently pled. A wage garnishment is a transfer of an interest of the debtor in property for the purposes of § 547(b). *See In re Morehead*, 249 F.3d 445, 447 (6th Cir. 2001). The debtor accrued a right to his wages as his wages were earned, and if his wages were earned during the

5

preference period, the transfers of his wages are avoidable. *Id*. at 448. The debtor's complaint alleges that the Credit Union's wage garnishment netted $1,999.50 of the debtor's wages during the preference period "[b]eginning with his pay advice dated January 30, 2025[.]" This allegation satisfies the elements of § 547(b)(1), (2), and (4)(A), respectively, that the transfers were to or for the benefit of the Credit Union, for or on account of an antecedent debt owed by the debtor to the Credit Union before such transfers were made, and made on or within 90 days before the date of the filing of the debtor's chapter 7 petition.[2] The third element under § 547(b)(3), that the transfers were made while the debtor was insolvent, is satisfied by § 547(f) which provides "the debtor is presumed to have been insolvent on and during the 90 days immediately preceding the date of the filing of the petition."

Finally, the debtor's standing in place of the chapter 7 trustee to seek avoidance of the alleged preferential transfers as required by § 522(h) is also adequately alleged. The complaint states that the debtor could have exempted the property transferred, the transfers were involuntary and unconcealed, and the chapter 7 trustee could have avoided under § 547 the property transferred but chose not to do so. And the aggregate value of the transfers of garnished wages exceeds the $600 requirement imposed by 11 U.S.C. § 547(c)(8) for an individual debtor whose debts are primarily consumer debts as verified by the debtor in his petition.

For the foregoing reasons the court concludes that the debtor's complaint sets forth a claim under §§ 522(h) and 547(b) to recover transfers of garnished wages. On the filing of this memorandum opinion, an order will be entered denying the Credit Union's motion to dismiss.

# # #

---

[2] It is uncertain if the debtor can recover all the garnished wages totaling $1,999.50. While the pay advice beginning January 30, 2025, did occur the day after the 90th day preceding the filing of the debtor's chapter 7 petition on April 29, 2025, the pay advice may have included wages earned prior to January 29, 2025, that would be outside the 90-day preference period. *See Holdway v. Duvoisin (In re Holdway)*, 83 B.R. 510, 513–14 (Bankr. E.D. Tenn. 1988) (wages garnished within preference period but earned prior thereto are not recoverable because the transfer occurs when the debtor earns the wages). This uncertainty may be resolved at trial and does not negate the sufficiency of the debtor's pleading.